**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BORDER COLLIE RESCUE, INC.,
NICHOLAS B. CARTER

        Plaintiffs,

vs.                            Case No. 3:04-cv-568-J-32HTS

REBECCA M. RYAN, et al.

        Defendants.

_____

**<u>ORDER</u>**[1]

    This case is before the Court on Defendant Murphy's Motion for Summary

Judgment (Doc. 228), Defendant Merwin's Motion for Sanctions (Doc. 262), Plaintiffs'

Amended Third Motion for Contempt Order, Fourth Motion for Default Judgment, Fifth

Motion to Strike Defendant Ryan's Defenses and Counterclaims, and Fifth Motion for

Sanctions Against Defendant Ryan (Doc. 293), Defendants Ryan and Flyaway Farm

and Kennels' Motion for Summary Judgment (Doc. 294), Defendant Merwin's Motion

for Summary Judgment (Doc. 295), Plaintiffs' Motion for Summary Judgment against

Ryan (Doc. 296), Defendant Ryan's Motion to Strike Plaintiffs' Motion for Summary

Judgment (Doc. 297), Plaintiffs' Motions to Strike and Deem Admitted (Doc. 300 &

---

    [1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

301), Plaintiff Carter's Motion for Protective Order (Doc. 315), Murphy's Motion to Strike (Doc. 317), Defendant Ryan's Motion for Leave to File a Reply to Plaintiffs' Opposition to Ryan's Motion for Summary Judgment (Doc. 320), Murphy's Motion for Leave to Reply to Plaintiffs' Response in Opposition to Murphy's Motion for Summary Judgment (Doc. 322), and Defendant Merwin's Motion to Strike Plaintiffs' Affidavits and Exhibits Submitted in Opposition to Merwin's Motion for Summary Judgment (Doc. 324).  The parties have submitted voluminous filings in connection with these motions.

## I.    BACKGROUND AND INTRODUCTION OF PARTIES

*Pro se* plaintiff Dr. Nicholas Carter ("Carter") operates plaintiff Border Collie Rescue, Inc. ("Border Collie")(collectively "plaintiffs"), a tax exempt 501(c)(3) organization specializing in training and providing Border Collie dogs to military bases and private commercial airports for the purposes of wildlife control.  Specifically, the dogs chase birds and waterfowl from airport runways so that they do not strike and cause damage to aircraft.

This industry is comprised of only a few competitors.  Among them are Border Collie and Rebecca Ryan d/b/a Flyaway Farm and Kennels (collectively "Ryan and Flyaway").  Carter and Ryan had a brief working relationship in 1999 when Ryan worked for Border Collie in Melrose, Florida.  Shortly after severing her ties with Carter and Border Collie, Ryan founded Flyaway Farm and Kennels ("Flyaway").

Ryan and Flyaway began competing with Border Collie in this unique business.  Both market their services to potential vendors via trade shows and internet websites.

Defendant Deirdre Merwin ("Merwin") began working for Border Collie in May 2000.  During a portion of the working relationship, Merwin worked at Dover Air Force Base ("Dover AFB") with the dogs placed there.  This employment relationship lasted until about September 2001, when Merwin ceased her employment with Border Collie.  Merwin and Ryan met in August 2001 at the U.S./Canada Birdstrike Conference in Calgary, Alberta ("Birdstrike Conference").  Shortly after the Birdstrike Conference, Merwin began working for Ryan; however, this lasted only six weeks because the contract Ryan had earmarked for Merwin to handle, the McConnell Air Force Base contract, was awarded to another entity.

Plaintiffs have also sued *pro se* defendant, Alexandra Murphy, alleging a number of Florida common law torts against her.  Since there are few facts discussing precisely how Murphy fits into this rather unique lawsuit, her overall involvement is not entirely clear.

Because the parties failed to perform meaningful discovery in this case, the Court addresses any relevant facts in conjunction with the legal analysis of each cause of action.  In short, plaintiffs allege twenty-one causes of action against Ryan and Flyaway, Merwin and Murphy.  Ryan and Flyaway allege four counterclaims (Doc. 58); the Court previously dismissed Count III (Intentional Infliction of Emotional

Distress). (Doc. 100). Merwin alleges two counterclaims, breach of contract and quantum meruit. (Doc. 107). Defendants move for summary judgment on all of plaintiffs' claims. Plaintiffs move for summary judgment on all of Ryan and Flyaway's counterclaims. There are no motions directed to Merwin's counterclaims. The parties have filed a plethora of other motions; the Court deals with each in turn.

## II.    MOTIONS FOR SANCTIONS

Plaintiffs filed an Amended Third Motion For Contempt of Court, Fourth Motion for Default Judgment, Fifth Motion to Strike Ryan's Defenses and Counterclaims, and Fifth Motion for Sanctions Against Ryan (Doc. 293) (hereinafter the "plaintiffs' sanctions motion"). Merwin filed Merwin's Motion for Sanctions against Carter and Border Collie Rescue (Doc. 262) ("Merwin's sanctions motion"). In plaintiffs' sanctions motion, plaintiffs assert that Ryan has been the impetus behind the discovery debacle that occurred in this case. The focus of Merwin's sanctions motion is Carter's refusal to have his deposition taken in this case, and the resources, fees, and Court time expended in attempting to set that deposition.

A review of the morass of filings and discovery motions reveals that all parties bear some culpability for allowing discovery and the procedural posture of this case to spiral out of control. Any further comment on the various degrees of culpability would only contribute to the rather silly spectacle that this case has become. Since

4

the parties have wasted each other's time and the Court's time[2], and have shown themselves incapable of participating in meaningful <u>civil</u> discovery, the Court has determined that the appropriate course of action is to rule on the legal merits of the parties' respective summary judgment motions on the present record.  The parties have created this mess, and will now have their motions ruled upon based on the limited discovery actually performed.  The Court is unimpressed with any argument that the parties have been rendered unable to support their respective claims or defenses because one party obfuscated more than the others during this particularly cantankerous and vitriolic litigation.  This course will hopefully facilitate the orderly resolution of this case. Thus, this Court exercises its discretion and denies plaintiffs' and Merwin's sanctions motions.

The Court, however, is mindful of a prior Order (Doc. 217) wherein the Court ordered Ryan to pay $326.32 to Carter for expenses incurred in bringing a motion to compel.  Given the rulings herein, the Court will defer enforcing this sanctions award until the case is over to see who, if anyone, owes what to whom.

## III.    MERWIN'S MOTION TO STRIKE

Before the Court addresses the merits of the summary judgment motions, it addresses Merwin's motion to strike plaintiffs' affidavits and exhibits submitted in

---

[2]    The Court has ruled on over forty motions addressed toward discovery and sanctions and multiple appeals of Magistrate Judge Snyder's Orders.

opposition to Merwin's motion for summary judgment (Doc. 324).  Plaintiffs filed a response.  (Doc. 325).  Merwin's multiple bases to strike plaintiffs' affidavits and exhibits are (1) plaintiffs' failure to disclose the affiants and exhibits under Rule 26, Federal Rules of Civil Procedure, (2) plaintiffs' failure to provide these exhibits in response to discovery requests, and (3) that plaintiffs' affidavits and exhibits offered in support of their opposition to summary judgment are replete with inadmissible evidence.  Plaintiffs' positions are that Merwin's motion to strike is untimely, and that they are excused from complying with Rule 26 because other parties, including Merwin, failed to do so.

Because it appears that none of the parties made proper Rule 26 disclosures, or otherwise properly conducted themselves in discovery, the Court exercises its discretion under Rule 37, Federal Rules of Civil Procedure, and elects not to strike any parties' summary judgment affidavits.  In rendering its decision at the summary judgment phase, the Court has considered all admissible evidence submitted by the parties.[3]

---

[3]   Merwin also makes numerous evidentiary arguments in the motion to strike highlighting various evidentiary deficiencies throughout plaintiffs' response to Merwin's motion for summary judgment.  While the Court notes that plaintiffs' response is replete with evidentiary flaws, the Court deems it best to address those deficiencies in conjunction with the motions addressing the substantive claims, rather than striking discrete portions of plaintiffs' response.

## IV.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Applicable Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material negating the opponent's claim." Id.  Instead, it may merely point out that there is an absence of evidence to support the non-moving party's case.  Id. at 324.  Alternatively, the moving party may support its motion with affirmative evidence demonstrating that the nonmoving party will be unable to prove

its case at trial.   <u>United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties in the State of Ala.</u>, 941 F.2d 1428, 1438 (11th Cir. 1991). Under either method, if the nonmoving party fails to make a sufficient showing on an essential element of the case, the moving party is entitled to summary judgment. <u>Celotex</u>, 477 U.S. at 323.  Further, "[f]or factual issues to be considered genuine, they must have a real basis in the record."  <u>Hairston v. Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993).  The party opposing summary judgment must adduce some evidence showing material facts are at issue.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 256 (1986).

### B.    Defendants' Motions For Summary Judgment

#### 1.    <u>Counts I, II and III - Misappropriation of Trade Secrets against Merwin, Ryan and Flyaway, and Murphy</u>

In separate summary judgment motions (Docs. 228, 294 & 295), Defendants assert plaintiffs have failed to meet their burden of demonstrating the existence of a trade secret, or that there has been any misappropriation or damages.  According to the First Amended Complaint ("Complaint") (Doc. 55), the purported misappropriation occurred when Merwin allegedly accessed "trade secrets, confidential information, foreign classified documents, and sensitive proprietary information" belonging to plaintiffs at the August 2001 Birdstrike Conference (Doc. 55, ¶¶ 38, 44, 52), and thereafter disclosed the alleged secrets to Ryan and Flyaway and Murphy.  (<u>Id.</u> at ¶

8

52).

To show misappropriation of a trade secret under Florida law, a claimant must prove: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated. Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001); Fla. Stat. § 688.002. In a trade secret action, the plaintiff bears the burden of demonstrating the specific information it seeks to protect is a trade secret. American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998).

Plaintiffs attempt to classify broad categories of documents and information as trade secrets, yet fail to provide supporting evidence or testimony that these items constitute trade secrets under Florida law. (Doc. 295, Ex. B, Interrog. Res. 8 & 10).[4] Instead, plaintiffs unilaterally filed under seal its proposal to the Israeli Air Force and baldly asserts it is a trade secret without proffering evidence as to why it qualifies as such.[5]

---

[4]   Plaintiffs filed their exhibits in response to defendants' motions for summary judgment as one massive filing. (See Doc. 312). These exhibits respond to Ryan's Motion for Summary Judgment (Doc. 294), Merwin's Motion for Summary Judgment (Doc. 295), and Murphy's Motion for Summary Judgment (Doc. 228). Plaintiffs' memoranda in opposition to Ryan's motion (Doc. 312), Merwin's motion (Doc. 313), and Murphy's motion (Doc. 314) have all been filed.

[5]   Plaintiffs also unilaterally filed under seal a copy of a Purchase Agreement between Ryan and Flyaway and a vendor ostensibly showing that Ryan and Flyaway used language from Border Collie's standard services contract. Plaintiffs, however, fail to establish this contract language as a trade secret under Florida law. Further,

Plaintiffs speculate that since Merwin had access to Carter's laptop computer for a short period during the August 2001 Birdstrike Conference, and the Israeli Air Force proposal was on the computer at that time and thereafter ended up in the hands of the Putnam County Sheriff's Office, Merwin misappropriated plaintiffs' trade secrets. (Doc. 294, Ex. 1, Carter Dep., p. 147, line 22 - p. 162, line 17). Plaintiffs further conclude, without providing any factual basis, that Merwin then disclosed these purported trade secrets to Ryan and Flyaway and Murphy, who, in turn, sent them to the Putnam County Police Department. (Id. at p. 157, lines 18 - 23). These conclusory allegations amount to nothing more than rank speculation, and are the type of conjecture which is insufficient to withstand a motion for summary judgment. See Early v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Thus, plaintiffs fail to proffer sufficient evidence as to whether the specific information they sought to protect was a trade secret, or that Merwin, Ryan and Flyaway[6], and Murphy

---

plaintiffs unilaterally filed a DVD under seal purporting to be a deposition of Putnam County Sergeant Michael Ogelsbee. There is no introductory information on the DVD to suggest this deposition was even taken in this case or is properly part of the summary judgment record. Thus, this Court will not consider it in ruling on the pending motions.

[6]     Plaintiffs assert that Ryan's apparent failure to timely respond to requests for admissions addressed toward the purported trade secret misappropriation creates a factual dispute.    The requests at issue are: "Defendant RYAN received misappropriated trade secrets and proprietary information from Defendant MERWIN owned by BC RESCUE and/or DR. CARTER," and "Defendant Ryan has inappropriately acquired property from BC RESCUE and DR. CARTER, including but not limited to the dog known as Fly." (Doc. 312, Ex. A, ¶ 9, Ex. B, ¶ 20).  The Court

engaged in any misappropriation.

### 2.   <u>Count IV - Conspiracy to Misappropriate Trade Secrets</u>

An actionable conspiracy requires an underlying tort or wrong.  <u>Palmer v. Gotta Have it Golf Collectibles, Inc.</u>, 106 F. Supp. 2d 1289, 1302-03 (S.D. Fla. 2000) (citing <u>Ovadia v. Bloom</u>, 756 So. 2d 137, 140 (Fla. 3d DCA 2000) (citations omitted)).  "An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy."  <u>Buckner v. Lower Fla. Keys Hosp. Dist.</u>, 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981).  Because defendants prevail on the misappropriation of trade secrets counts, they likewise prevail on Count IV (conspiracy to misappropriate trade secrets).

### 3.   <u>Counts V & VI - Civil Theft and Conversion against Merwin and Ryan</u>

Plaintiffs make broad allegations of civil theft and conversion against Merwin relating to "property" she failed to return to plaintiffs when she left their employ. Regardless of whether Florida or Delaware law is applied to these allegations, the

---

will not deem these requests admitted by Ryan as both impermissibly capture the essence of an entire claim, and the former calls for a legal conclusion.  <u>See</u> <u>Perez v. Miami-Dade County</u>, 297 F.3d 1255, 1261, n. 12 (11th Cir. 2002) (noting district court struck a number of requests for admissions that were not timely responded to because they improperly called for legal conclusions); <u>see also</u> <u>Pickens v. Equitable Life Assurance Soc'y</u>, 413 F.2d 1390, 1393-94 (5th Cir. 1969) (a request for admission as to a central fact in dispute is beyond the proper scope of discovery); <u>In re Olympia Holding Corp.</u>, 189 B.R. 846, 853 (Bkrtcy.M.D. Fla. 1995) (a request for admission of a conclusion of law is improper).  Thus, Ryan and Flyaway's apparent failure to respond to these requests do not preclude summary judgment in their favor.

record illustrates that plaintiffs fail to proffer sufficient evidence that Merwin wrongfully took or detained plaintiffs' "property." The remaining civil theft and conversion allegations concern the dog named "Fly." The parties disagree as to which state's law (Delaware or Florida) applies to the purported civil theft and conversion of Fly.

### a.   choice of law

Plaintiffs contend that since this court, at the motion to dismiss phase (Doc. 101), denied Merwin's motion to dismiss for lack of personal jurisdiction, Florida law, and not Delaware law, applies to the alleged abduction of Fly. Merwin suggests that since the act giving rise to the torts occurred in Delaware, Delaware law applies. Florida uses the significant relationships test to determine conflicts of law sounding in tort. Bishop v. Florida Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980); Restatement (Second) of Conflict of Law § 145.[7]

Applying the factors set forth in Bishop and §§ 145 and 146 of the Restatement, the Court concludes that Florida law applies to this claim. While Fly was apparently removed from the Air Force base in Dover, Delaware, plaintiffs maintain their

---

[7] The Restatement (Second) of Conflicts §§ 145 and 146 set forth the appropriate factors to consider when applying the "significant relationships test." Section 146 provides that the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, another state has a more significant relationship. The contacts to be taken into account under § 145 include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

business operations in Florida, and the contractual agreement that governed Merwin's employment with Border Collie stipulates that Florida law applies to any disputes arising thereunder.  While the alleged removal of Fly may or may not fall under the purview of the employment agreement, the contract itself evinces that Florida was the epicenter of Merwin's relationship to plaintiffs.  Further, the economic harm, if any, resulting in the removal of Fly from the Dover Air Force Base will presumably be felt in plaintiffs' overall business operations, which were located in Florida at the time of the purported incident.[8]

### b.   civil theft

Section 772.11, Florida Statutes, requires a showing of "felonious intent" in order to hold a party liable for civil theft.  Lewis v. Heartsong, Inc., 559 So. 2d 453, 454 (Fla. 1st DCA 1990) (citations omitted).  The statute also requires a party bringing a claim for civil theft to make a written demand of the other party prior to initiation of suit.  Fla. Stat. § 772.11.  Plaintiffs do not refute Merwin's assertion that they failed to timely make the required pre-suit demand.  While it is doubtful such a failure is sufficient grounds alone for summary judgment[9], this case couples that failure with

---

[8]   Ryan and Flyaway apparently agree with plaintiffs that Florida law applies to the civil theft and conversion claims as her motion focuses on Florida law.

[9]   Multiple Florida courts, state and federal, have addressed a party's failure to comply with the conditions precedent in the civil theft statute.  See Christopher Adver. Group, Inc. v. R&B Holding Co., Inc., 883 So. 2d 867, 875-76 (Fla. 3d DCA 2004) (reversing directed verdict in favor of defendant on the basis that plaintiff failed to

plaintiffs' failure to proffer any evidence, much less clear and convincing evidence, suggesting Merwin and Ryan acted with felonious intent.  Since plaintiffs fail to show a genuine issue of material fact as to whether Merwin and Ryan acted with felonious intent, summary judgment is appropriate.  See Palmer, 106 F.Supp.2d at 1303.

### c.    conversion

"[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time."  Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc., 481 So. 2d 501, 503 (Fla. 2d DCA 1985). Under Florida law, a conversion claim is distinct from a statutory civil theft claim because the law does not require felonious intent to commit conversion.  Stearns v. Landmark First Nat. Bank of Fort Lauderdale, 498 So. 2d 1001, 1002 (Fla. 4th DCA 1986).

Plaintiffs submit the affidavit of Mildred Tanner, who states that she owned Fly and in the summer of 1998 relinquished her ownership interest in Fly to Border Collie. (Docs. 312 & 313, Tanner Aff.).[10]  Merwin and Ryan submit the affidavit of Rebecca

---

comply with civil theft statute by sending demand letter to defendant on same day complaint was filed, and holding the failure to follow the statute was cured by the passage of time); see also Seymour v. Adams, 638 So. 2d 1044, 1048 (Fla. 5th DCA 1994) (summary judgment for failure to follow conditions precedent in statute was properly denied because the record was unclear whether a written demand was ever made); Korman v. Iglesias, 736 F.Supp. 261, 267 (S.D. Fla. 1990) (failure to plead compliance with conditions precedent in civil theft statute is excusable neglect).

[10]    In response to plaintiffs' opposition and the submission of the Tanner affidavit, Ryan filed a Motion for Leave to Reply to Plaintiffs' Opposition to Ryan's Summary Judgment Motion.  (Doc. 320).  In the reply, which the Court considered in ruling on

Shouse, who affies that she was the rightful owner of Fly in 1999.  Shouse states that she sent Fly to Carter for him to socialize and train Fly, not to serve as a birdstrike dog.  (Doc. 294, Ex. "9"; Doc. 295, Ex. "D").  Shouse also states that she did not relinquish ownership of Fly and ultimately demanded Fly's return, but Carter refused.  (Id.).  Shouse further contends that after numerous demands that Carter return Fly, Shouse was forced to forgo further pursuing Fly's return due to health concerns and her inability to travel to Florida to obtain Fly.  (Id.).

These competing affidavits create a factual dispute as to whether or not plaintiffs were the rightful owners of Fly.  Further, the Court also finds a factual dispute as to whether or not Merwin and Ryan wrongfully deprived Carter of his ownership interest in Fly.  However, Merwin's Employment Agreement with Border Collie, signed on July 6, 2000 and attached as Exhibit "A" to plaintiffs' First Amended Complaint, addresses the return of dogs (such as Fly).[11]  While Florida's economic loss rule, see

---

the summary judgment motions, Ryan provides further explanation as to how Fly ultimately came into plaintiffs' control.  Even with this explanation, viewing the evidence in the light most favorable to plaintiffs, as is required under Rule 56, Federal Rules of Civil Procedure, the Court finds a disputed issue of fact on the conversion claims against Merwin and Ryan.  Merwin and Ryan are certainly entitled to elicit the information contained in the reply from Tanner during cross examination if she testifies at trial.  Then, the Court, upon proper motion, will consider any such testimony at the Rule 50 directed verdict phase.

[11]  Section 4.8 of Merwin's Employment Agreement provides, "EMPLOYEE [Merwin] understands that all dogs will remain the sole property of BCR and must immediately be relinquished to a BCR representative upon request or at the termination of this Agreement.  BCR will reimburse EMPLOYEE for all reasonable

Indemnity Insurance Company of North America v. American Aviation, Inc., 891 So. 2d 532 (Fla. 2004), may well preclude plaintiffs from recovering in tort on this claim against Merwin, the Court pretermits that decision because plaintiffs' conversion evidence at trial against Merwin and Ryan and Flyaway will be essentially the same as the breach of contract evidence (Count VIII).  Thus, summary judgment is due to be granted to Merwin and Ryan on Count V (civil theft), and denied to Merwin and Ryan on Count VI (conversion).

### 4.     **Count VII - Breach of Fiduciary Duty against Merwin**

The basis of Border Collie's claim for breach of a fiduciary duty against Merwin is difficult to discern; Border Collie provides no detail in the First Amended Complaint concerning this claim, and merely states in its response to Merwin's motion that "Merwin had a duty to refrain from committing torts against the Plaintiffs by badmouthing their services...."  (Doc. 313, p. 7).  Merwin asserts that since Border Collie has failed to articulate a loss separate from the breach of contract claim, the economic loss rule bars recovery.

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.  Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted).  The

_____

expenses related to the care and health of said dogs, provided that all expense[s] are approved and documented as provided in Section 4.2(c)."

16

Court determines Border Collie has failed to show any fiduciary duty that Merwin purportedly breached, and thus does not reach the economic loss rule issue. Summary judgment is due to be granted to Merwin on Count VII (breach of fiduciary duty).

### 5.   Count VIII - Breach of Contract against Merwin

Merwin moves for summary judgment on Border Collie's claim for breach of contract; Merwin asserts Border Collie fails to establish a prima facie case for breach of contract because it fails to set forth facts showing it incurred any damages due to Merwin's purported breach of her Employment Agreement and Non-Compete and Confidentiality Agreement.  Border Collie states that it has sufficiently set forth facts in the Nicholas Carter affidavit showing Border Collie suffered damages due to the alleged breach.

Under Florida law, the elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages.  Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992).  A material breach occurs only when an injured party has sustained a substantial injury due to the breach.  Bland v. Freightliner LLC, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002).  A plaintiff may only recover if the damages are a proximate cause of the material breach.  Chipman v. Chonin, 597 So. 2d 363, 364 (Fla. 3d DCA 1992) (citation omitted).

Carter's assertions in his affidavit concerning Merwin's purported actions of

17

stealing plaintiffs' proprietary information and subsequently divulging it are entirely conjectural and fail to establish any breach or any damages Border Collie has suffered as a result. (Doc. 312, Carter Aff.). However, viewing the evidence in the light most favorable to the plaintiffs, the portions of the breach claim on which the Court deems there to be a triable issue are whether Merwin breached the Employment Agreement by terminating her employment early and going to work for Ryan and by allegedly failing to return Fly to plaintiffs at the conclusion of her employment with Border Collie. Thus, summary judgment to Merwin is due to be granted in part and denied in part on this claim.

**6. Counts IX, X, XI and XII - Tortious Interference with Business/ Contractual Relationships against Ryan and Flyaway (SWFIA, DBIA, Merwin and Dover AFB Contracts)**

Plaintiffs claim Ryan and Flyaway tortiously interfered with their alleged business relationships with Southwest Florida International Airport and Lee County Port Authority ("SWFIA") and Daytona Beach International Airport ("DBIA"), and tortiously interfered with Border Collie's contractual relationships with Merwin and Dover Air Force Base ("Dover AFB"). To establish a claim for tortious interference with an advantageous business or contractual relationship, a party must prove: (1) the existence of a business relationship or contract; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with that relationship by the defendant which induces or otherwise causes nonperformance; and (4) damages

18

resulting from the tortious interference.  <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 814 (Fla. 1994).

### a.    **SWFIA**

Ryan and Flyaway submit, *inter alia*, that plaintiffs have proffered no evidence that they intentionally and unjustifiably interfered with plaintiffs' business relationship with SWFIA.  Plaintiffs retort that Ryan and Flyaway's alleged defamatory remarks dissuaded SWFIA from consummating a second contract with Border Collie.  Plaintiffs merely submit the Carter affidavit which makes the conclusory leap that SWFIA's determination to accept Ryan and Flyaway's bid, rather than plaintiffs', was the result of tortious interference.  While plaintiffs assert that Ryan and Flyaway made "direct contact" to SWFIA airport officials to interfere with the purported business relationship, plaintiffs submit no evidence concerning precisely how this occurred.[12]  In response, Ryan and Flyaway submit the affidavit of Bobby Orick, the Airside Airport Operations

---

[12]    Plaintiffs attempt to rely on requests for admissions served upon Ryan on September 23, 2004 and October 22, 2004, to which Ryan purportedly never responded, to create an issue of material fact on this tortious interference claim.  <u>See</u> Fed.R.Civ.P. 36(a) (a request for admission is deemed admitted unless a party timely responds to the request).  The requests on which plaintiffs rely to create a factual dispute on the tortious interference claim pertaining to SWFIA read: 1) "Defendant Ryan has personally defamed Plaintiffs BC Rescue and Dr. Carter" (Doc. 312, Ex. "A," ¶ 24); and 2) "Defendant Ryan has knowingly and maliciously published public false statements of fact concerning Plaintiffs BC Rescue and Dr. Carter in order to injure their professional and business reputations." (<u>Id.</u> at Ex. "B," ¶ 18).  The Court will not deem these requests admitted as they improperly call for legal conclusions and go far beyond the permissible scope of a request for admission.  <u>See</u> <u>Perez</u>, 297 F.3d at 1261, n. 12; <u>see also</u> <u>Pickens</u>, 413 F.2d at 1393-94.

Manager of SWFIA, who affies SWFIA solicited bids from three vendors, including

Border Collie and Ryan, and chose Ryan in accordance with its normal evaluation

procedures, and that Ryan never did anything untoward in procuring the contract.

(Doc. 294, Ex. 5).  Plaintiffs' conjectural assertions are insufficient to create an issue

of material fact on Count IX (tortious interference - SWFIA).  See Early, 907 F.2d at

1081.

### b.    DBIA

For the same reasons set forth in the preceding section, summary judgment is

due to be granted to Ryan and Flyaway on Count X (tortious interference - DBIA).

Plaintiffs submit no evidence that Ryan and Flyaway intentionally and unjustifiably

interfered with plaintiffs purported business relationship with DBIA.  These allegations

similarly amount to nothing more than rank speculation and conjecture, as they are

not buttressed by facts.  See id.  Again, Ryan and Flyaway proffer the affidavit of

Rebecca Bishop, the Purchasing Agent for Volusia County responsible for bird control

dogs at DBIA, who affies that the County followed its established merit-based

procedures in awarding the contract to Ryan.  (Doc. 294, Ex. 6).

### c.    Merwin

Ryan and Flyaway assail Border Collie's claim in Count XI that they tortiously

interfered with Border Collie's non-compete and confidentiality agreement with

Merwin, and asserts there is no evidence that Merwin left Border Collie's employ due

to any such interference.  Border Collie points out that Ryan was aware of Merwin's contractual relationship with Border Collie and had her attorney review Merwin's noncompete agreement for enforceability, which, according to Border Collie, is direct evidence of tortious interference.

Even though the enforceability of Merwin's non-compete agreement is indeed dubious, a claim for tortious interference can lie even if the contract forming the basis of the relationship is void and unenforceable.  See United Yacht Brokers, Inc. v. Gillespie, 377 So. 2d 668, 672 (Fla. 1979).  While the evidence Border Collie proffers on this claim is entirely circumstantial, viewing the evidence in the light most favorable to Border Collie, there is a genuine issue of material fact as to whether Ryan and Flyaway tortiously interfered with Border Collie's contractual relationship with Merwin. Thus, summary judgment for Ryan on Count XI (tortious interference - Merwin) is due to be denied.

### d.    **Dover AFB**

Ryan and Flyaway move for summary judgment on Count XII (tortious interference with contracts - Dover AFB) on the basis that Border Collie cannot establish it had an understanding with Dover AFB that it would re-hire Border Collie when their contract expired.  In fact, toward the end of Dover's contractual term with Border Collie, Dover issued a request for proposal seeking competitive vendor bids. Dover ultimately selected Ryan for the contract.  Border Collie asserts that Ryan's

alleged defamatory comments underlie the basis of this tortious interference claim.

Border Collie styles this claim as a tortious interference with contractual relationships claim, but an analysis of the substance of the claim shows that it is a tortious interference with business relationships claim.  Again, Border Collie's claim for tortious interference hinges on whether there was an intentional or unjustified interference with the relationship.  Border Collie's speculative assertions that Ryan and Flyaway defamed Border Collie in procuring the Dover contract constitute insufficient evidence to create a factual dispute.  There is no evidence as to the nature of any defamatory remarks or the effect that these remarks had on the award of the Dover contract.  To the contrary, Ryan and Flyaway present undisputed facts via affidavit from Donald Hall, the recently retired United States Air Force Master Sergeant and Flight Safety Non-Commissioned Officer at Dover AFB, who was intimately involved with the awarding of the 2002 contract at issue.  (Doc. 294, Ex. 7). Master Sergeant Hall affies that not only was Ryan awarded the contract according to federal regulations, but that Ryan made no derogatory comments concerning any other bidder.  (Id. at ¶¶ 3, 5).  Thus, summary judgment for Ryan and Flyaway is likewise appropriate on Count XII.

**7.    Count XIII - Tortious Interference with Business Relationships against Murphy (DBIA).**

Murphy asserts she is entitled to summary judgment on plaintiffs' claim for tortious interference with business relationships (DBIA) because plaintiffs fail to

establish the elements of the prima facie case.  As the basis for this claim, plaintiffs point to a number of statements and actions purportedly attributable to Murphy concerning Border Collie's alleged nefarious conduct.  Even assuming plaintiffs had a cognizable business relationship with DBIA, they fail to set forth any facts correlating Murphy's purportedly untoward actions with DBIA's decision not to award a contract to plaintiffs.  Thus, summary judgment is due to be granted to Murphy on Count XIII.

### 8.   Count XIV - Tortious Interference with Contractual Relationship against Merwin (Dover AFB)

Merwin moves for summary judgment on Count XIV on the grounds that Border Collie fails to show a breach of contract giving rise to a tortious interference with contractual relationships claim.  Merwin further asserts that to the extent the claim is construed as a tortious interference with business relationships claim, Border Collie has failed to show it was eligible for the Dover AFB contract, or that Merwin engaged in any malicious or unjustified interference with Border Collie's relationship with Dover AFB.  Border Collie asserts that Merwin's alleged derogatory comments to Dover AFB officials and the purported misrepresentation as to Fly's death suffices to create a factual dispute as to whether this claim lies.

While it is not entirely clear whether Border Collie asserts a claim for tortious interference with contractual relationships or tortious interference with business relationships, the Court will treat the claim as the latter even though Border Collie

23

styles it as the former.  This is because the substance of the claim and Border Collie's response to summary judgment addresses it as a tortious interference with business relationships claim.

Border Collie's assertions that Merwin's alleged comments or actions resulted in Ryan procuring the 2002 Dover contract are unsupported.  Border Collie goes so far as to state that Master Sergeant Hall's affidavit in support of Ryan's motion for summary judgment "demonstrates Merwin's interference with the relationship and resulting damage...."  (Doc. 312).  The Court's review of the Hall affidavit shows this assertion is without merit.   Even assuming Border Collie asserts a cognizable business relationship with Dover AFB, it fails to present facts suggesting any malicious or unjustified interference by Merwin.  Thus, summary judgment is due to be granted to Merwin on Count XIV.

### 9. **Count XV - Conspiracy between Ryan and Flyaway and Murphy to Interfere with Plaintiffs' Business Relationship with DBIA**

Because Ryan and Flyaway and Murphy prevail on plaintiffs' claims for tortious interference with business relationships with DBIA (Counts X and XIII), they prevail on this conspiracy count.  See  Buckner, 403 So. 2d at 1027.

### 10. **Count XVI - Conspiracy between all Defendants to Interfere with Dover AFB**

For the reasons previously set forth, summary judgment is due to be granted

to all defendants on Count XVI.

### 11.   Count XVII - Lanham Act violations against Ryan and Flyaway

Ryan and Flyaway move for summary judgment on Count XVII (violation of Lanham Act, 15 U.S.C. § 1125(a)) positing plaintiffs fail to proffer sufficient facts establishing the elements of a Lanham Act violation.  Plaintiffs contend Ryan and Flyaway violated the Lanham Act because its promotional materials contain misleading advertisements that Ryan trained border collies that were actually trained by plaintiffs.

To prevail on a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B), a plaintiff must adduce evidence of the following: (1) the advertisements of the opposing party are false or misleading; (2) the advertisements actually deceived consumers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by causally related declining sales or loss of goodwill. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260-61 (11th Cir. 2004); Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 915 F. Supp. 360, 364 (S.D. Fla. 1996), aff'd 136 F.3d 139 (11th Cir. 1998).  To survivie a motion for summary judgment, plaintiffs must support each element of the Lanham Act claim with more

than mere allegations.  See McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 (11th Cir. 1981).

It is once again difficult to discern the nature of plaintiffs' claim, in that they apparently plead in the alternative that Ryan and Flyaway's statements in promotional materials are both false and misleading.  There are two distinct types of Lanham Act claims; those based on literally false representations, and those based on implicitly false representations, i.e. those that may technically be true or ambiguous, but implicitly convey a false impression.  Hickson, 357 F.3d at 1261; Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 311 (1st Cir. 2002).  When an advertisement is literally false, a court may grant relief irrespective of evidence of consumer reaction or confusion.  Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 33 (1st Cir. 2000).  In the absence of such literal falsity, an additional burden is placed upon a plaintiff to show that the advertisement conveys a misleading message to consumers, (id.) and that the relevant consumer population was actually deceived (Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 323 (6th Cir. 2001) (citation omitted)).  In implicit falsehood cases, Eleventh Circuit precedent requires the plaintiff to present evidence of deception in the form of consumer surveys, market research, expert testimony, or some other appropriate form.  See Hickson, 357 F.3d at 1261 (citing Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir.

2002)).  Some courts have held that a plaintiff asserting a claim for permanent injunctive relief need not show that consumers were actually deceived, but only that the false advertisement has a tendency to deceive.  Herman Miller, 270 F.3d at 323 (citation omitted); Toro Co. v. Textron, Inc., 499 F. Supp. 241, 251 (W.D. Tex. 1980) (citation omitted).

After reviewing Ryan and Flyaway's promotional materials appended to plaintiffs' summary judgment response, albeit unauthenticated, it appears the alleged representations are more in line with implicit falsities, rather than literal falsities.[13]  The materials repeatedly state that Ryan "trained or worked with" dogs currently working at various Air Force bases.  (Doc. 312, Ex. "T").  The use of the disjunctive here removes these representations from the purview of a literal falsity since it does not assert only that Ryan "trained" these particular dogs.  (Id.).  In fact, the record is clear that while Ryan worked for Border Collie, she did "work with" various dogs; thus, plaintiffs' claim must be that Ryan is overstating her qualifications.

Since this claim is an "implicit falsity" claim, plaintiffs must proffer evidence of actual deception.  See Hickson, 357 F.3d at 1261.  Plaintiffs, however, fail to show even a scintilla of evidence that any alleged representations (1) actually deceived consumers, much less had a tendency to deceive, or (2) were material and likely to

_____

[13]    This assumes, *arguendo*, that the alleged representations are even properly the subject of a Lanham Act claim.

affect purchasing decisions.  Thus, summary judgment is due to be granted to Ryan

and Flyaway on Count XVII (Lanham Act).

### 12.    Count XVIII - Defamation and Trade Libel against Ryan

#### a.    defamation

Ryan moves for summary judgment on Count XVIII (defamation and trade libel)

stating that even assuming statements made to Putnam County police were

defamatory, they are nevertheless clothed in a qualified privilege.  Plaintiffs state,

*inter alia*, there is an issue of fact whether Ryan falsely initiated a police investigation

into Border Collie in late 2001.

The elements of defamation claim are: (1) the defendant published a false

statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the

statement caused injury to plaintiff.  Bass v. Rivera, 826 So. 2d 534, 534 (Fla. 2d

DCA 2002).  Voluntary statements made by private individuals to police in furtherance

of an investigation are clothed in a qualified privilege.  Fridovich v. Fridovich, 598 So.

2d 65, 69 (Fla. 1992).  To overcome a qualified privilege, a plaintiff has to show by

a preponderance of the evidence that the defamatory statements were false and

uttered with common law express malice.  Id.  Express malice sufficient to overcome

the presumption of good faith exists where the primary motive for the statement is

shown to be an intention to injure.  Thomas v. Tampa Bay Downs, Inc., 761 So. 2d

401, 404 (Fla. 2d DCA 2000)(quotation omitted).  The issue of whether the qualified

privilege exists is a question of law for the court when the circumstances surrounding the communication are undisputed.  Cape Publ'ns, Inc. v. Reakes, 840 So. 2d 277, 280 (Fla. 5th DCA 2003) (citing Nodar v. Galbreath, 462 So. 2d 803, 809 (Fla. 1984)).

In opposition to summary judgment, plaintiffs submit a jumble of e-mails, most of which Ryan did not even author, newspaper articles, and police reports in an attempt to create a factual dispute as to whether Ryan's statements were defamatory. (Doc. 312, Exs. E, L, and M).  Plaintiffs fail, however, as the undisputed facts show that Sergeant Michael Ogelsbee of the Putnam County Sheriff's Office initiated an investigation into Nicholas Carter and Border Collie in September 2001, contacted Ryan concerning her experiences at Border Collie, and requested that she send a notarized letter setting forth the information she conveyed orally.  (Doc. 294, Ex. 10, ¶¶ 3-5).  That letter, appended to plaintiffs' response to Ryan's motion for summary judgment (Doc. 312, Ex. AA), sets forth Ryan's account of Carter's treatment of the dogs during her employ.  Though plaintiffs submit a copy of the letter, they fail to set forth record evidence that it was the product of express malice.  Plaintiffs have thus failed to carry their burden of overcoming the qualified privilege.

### b.    trade libel

While Ryan specifically addresses only the defamation portion of Count XVIII in her motion, it is clear she intended to move for summary judgment on all claims pending against her.  Thus, to the extent plaintiffs assert a trade libel claim in Count

XVIII, the court likewise finds no triable issue of fact on that claim.[14]

To state a valid claim of trade libel, plaintiffs must allege: (1) a falsehood; (2) has been published, or communicated to a third person; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood. Stewart Title Guar. Co. v. Title Dynamics, Inc., 2005 WL 2548419 (M.D. Fla. 2005) (unpublished opinion) (citations omitted).

The foundation of the trade libel claim is Ryan's letter to Sergeant Ogelsbee in November 2001.  (Doc. 55, ¶¶ 86-90).  Assuming, *arguendo*, the statements in the letter are false, plaintiffs proffer no facts, whatsoever, that this letter was disseminated to potential clients, or that it materially affected their desire to professionally contract with Border Collie.  Thus, summary judgment is due to be granted to Ryan on Count XVIII (defamation and trade libel - Ryan).

### 13.   Count XIX - Defamation and Trade Libel against Merwin

For the reasons previously set forth, Merwin is entitled to summary judgment on Count XIX.  Plaintiffs similarly fail to assert sufficient facts to overcome Merwin's

_____

[14]   It is not entirely clear whether plaintiffs plead both a defamation and trade libel claim in Count XVIII.

qualified privilege.  Even assuming plaintiffs properly assert a trade libel claim against Merwin, they fail to provide any evidentiary link between Merwin's statements to Sergeant Ogelsbee and whether those statements materially affected any third party's desire to do business with Border Collie.

### 14.   Count XX - Slander against Merwin

Plaintiffs assert yet another defamation based claim against Merwin; this claim is for slander.  Merwin contends that plaintiffs' slander claims are barred because plaintiffs have failed to put forth evidence that Merwin made any oral statements constituting slander.  Even though Count XX is premised on allegedly slanderous comments Merwin made to the Putnam County Police Department, plaintiffs now apparently change course.  In the response to summary judgment, plaintiffs attempt to create an issue of fact that the alleged slanderous comments were made to Dover AFB concerning Fly's insufficient care and purported death. (Doc. 312).  Once again, plaintiffs fail to proffer any admissible evidence showing any such statements were made.  Instead, plaintiffs rely on the affidavits of Nicholas Carter and Emily Ann Wheeler, a former Border Collie employee, who assert that Dover AFB officials told them that Merwin made comments to the officials concerning Fly's death and plaintiffs' lack of sufficient care for Fly and other dogs.  (Doc. 312, Carter Aff., ¶ 3,

31

Wheeler Aff., ¶¶ 6, 7).[15]  This is inadmissible hearsay and thus insufficient to create

an issue of fact.  <u>See</u> <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (a

court generally cannot consider inadmissible hearsay evidence in opposition to a

summary judgment motion); <u>see also</u> Fed.R.Civ.P. 56(e) (requiring affidavits in

opposition to summary judgment be made on personal knowledge and  set forth facts

as would be admissible in evidence).

### 15.   **Count XXI - Conspiracy to Defame and Trade Libel against Ryan and Merwin**

Because Ryan and Merwin prevail on the predicate defamation and trade libel

claims, summary judgment is appropriate on this conspiracy claim.  <u>See</u>  <u>Buckner</u>,

403 So. 2d at 1027.

### C.   **Plaintiffs' Motion for Summary Judgment Against Ryan**

### 1.   **Count I - Lanham Act**

Plaintiffs move for summary judgment on Ryan's counterclaim for violations of

the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), on the grounds that (1) the record is

devoid of evidence that plaintiffs' promotional materials, including those on plaintiffs'

website, are untrue, and (2) there is insufficient evidence that statements made

---

[15]  Plaintiffs also cite the transcript of a debriefing concerning Border Collie's failure to obtain the Charleston AFB contract (Doc. 312, Exhibit S) as evidence of Merwin's alleged defamatory statements to Dover AFB officials.  Not only is this transcript inadmissible hearsay, it does not contain specific discussions of whether the information Charleston AFB received from Dover AFB concerning Border Collie's qualifications was in any manner related to statements made by Merwin.

damaged Ryan.  In opposition, Ryan contends plaintiffs violated the Lanham Act in three distinct ways: (1) oral statements to Phillip Roberts ("Roberts"), Manager of Technical Operations at Windsor Airport in Ontario, Canada, at the Birdstrike Conference concerning Border Collie's client roster and Ryan and Flyaway's performance for other vendors, (2) false and misleading representations on Border Collie's website, and (3) the dissemination of false and misleading promotional materials to Roberts at the Birdstrike Conference.

### a.      oral statements at Birdstrike Conference

Ryan and Flyaway's counterclaim is based solely on alleged false or misleading representations on plaintiffs' website and in promotional materials plaintiffs disbursed at a 2003 trade show.  Thus, the alleged oral statement made to Roberts at the Birdstrike Conference raised for the first time in opposition to summary judgment cannot now serve as a basis to avoid summary judgment.

### b.      Border Collie website

Plaintiffs' motion for summary judgment on the ground that Ryan and Flyaway cannot show any evidence of damages based on representations on the Border Collie website[16] requires the Court to determine the nature of the representations, i.e.

_____

[16]   Plaintiffs' motion and Ryan and Flyaway's response clearly indicate that the website at issue belongs to plaintiffs.  Even though Ryan and Flyaway authenticate the website printouts, they do not establish that the website printouts are nonhearsay, plaintiffs' business records, or subject to some other hearsay exception.  The Court nevertheless considered the website for purposes of summary judgment as it deems

whether they are literally or implicitly false.  See Cashmere, 284 F.3d at 311.

The Court finds an issue of material fact as to whether the Border Collie website statements that (1) SWFIA was a "current" client in 2004, (2) all Border Collie dogs are trained at Dover Air Force Base, and (3) various dogs were "currently" working at Dover AFB in 2004, are literally false.  Damages are thus presumed, and Ryan and Flyaway need not show evidence of damages to obtain money damages or permanent injunctive relief.  Thus, summary judgment is due to be denied to plaintiffs on all literal falsehood claims.

The remainder of the website statements, however, fall in the category of implicitly falsities.[17]  Ryan and Flyaway proffer no evidence that a "significant portion," much less any portion, of the relevant consuming public[18] was deceived by these representations, as is required to obtain damages on such a claim.  The only damages evidence submitted is the affidavit of retired Major Ronald L. Merritt ("Merritt"), former Chief of the Air Force Bird Aircraft Strike Hazards (B.A.S.H.) Team

---

this evidence the type that can be reduced to admissible form at trial.  See Macuba, 193 F.3d at 1323 (citations omitted).

[17]   This information includes the Dover AFB "Contractor Performance Report" for the period February 1, 2000 through September 30, 2000, and the results of the SWFIA study.  (Doc. 311, Ex. 9A-9B).  There is no evidence that this information and the website statements relating to them are literally false.  Thus, there must be proof of damages.

[18]   The "relevant consumers" are those  groups of people to whom the advertisement is addressed.  See Cashmere, 284 F.3d at 312 n. 11.

for the U.S. Air Force.  (Doc. 311, Ex. 11).  While Merritt states that the airfields and commercial airports normally utilize internet websites, among other promotional mediums, to select an appropriate vendor, and that they would undoubtedly come across the Border Collie website and rely on the purported falsehoods and misrepresentations therein in the decision making process, there is no evidence proffered that any airfield or airport actually did so.  (Doc. 311, Ex. 11, ¶¶ 4-5). Though the Court has no reason to doubt Merritt's expertise in how customers choose a vendor in this particular industry, his assertions do not tend to establish that the relevant consuming public was actually deceived.  Further, assuming *arguendo* that a lower threshold of proof applies to claims for permanent injunctive relief under the Lanham Act, Merritt's assertions are likewise insufficient to establish that these statements had a tendency to deceive the relevant consumers.  Thus, summary judgment is due to be granted to plaintiffs on all website statements deemed implicit falsehoods.

### c.    promotional materials at Birdstrike Conference

Though Ryan and Flyaway submit the Roberts affidavit attempting to show damages due to Border Collie's alleged false and misleading statements, a close reading shows that the statements Carter purportedly made about Ryan and Flyaway, and not the promotional materials, caused Roberts to not recommend Ryan and

Flyaway to his superiors at Windsor Airport.[19]  Further, the record is unclear as to the precise representations in the promotional materials as they are not specifically appended as an exhibit to Ryan and Flyaway's opposition.[20]  For these reasons, Plaintiffs are entitled to summary judgment on the portion of the Lanham Act claim pertaining to promotional materials disbursed at the 2001 Birdstrike Conference.

### 2.    Count II - Defamation and Trade Libel

Plaintiffs move for summary judgment on Ryan's defamation and trade libel claim alleging there is no evidence that Nicholas Carter made any defamatory statement, or that Ryan was damaged by any such statement.  In opposition, Ryan asserts there is a factual dispute on three separate grounds under Count II: (1) Carter's oral statements to Roberts at the Birdstrike Conference; (2) the letter distributed to Ryan and Flyaway's clients; and (3) Carter's 1999 statement that Ryan stole a truck.[21]

───────────────────

[19]   These statements also form the basis of Ryan and Flyaway's defamation and trade libel claim.

[20]   Ryan and Flyaway do not state whether these promotional materials are the same as the information on Border Collie's website.

[21]   Similar to plaintiffs, Ryan and Flyaway lump their defamation and trade libel claims together.  These causes of action are separate and distinct under Florida law. Further, it appears from Ryan and Flyaway's summary judgment response that they have abandoned the trade libel portion of the claim, and have elected to proceed under common law defamation theories.  Thus, summary judgment is due to be granted to plaintiffs on the trade libel portion of the claim.

Ryan submits the Roberts affidavit, which provides that Carter told Roberts that Ryan engaged in "poor dog training", "provided badly trained dogs that were running across runways", and that "Ryan did not properly train their (sic) dog handlers." (Doc. 296, Ex. 3).[22]  Roberts, a potential vendor, further states that based upon Carter's statements about Ryan, he was dissuaded from recommending to Windsor Airport that it obtain a trained dog from Ryan and Flyaway.  This, at very least, creates an issue of fact as to whether (1) Carter uttered these statements to Roberts, (2) the statements are false, and (3) Ryan and Flyaway suffered damages because of them.

Ryan and Flyaway have also adduced evidence concerning a letter Carter purportedly sent on Volusia County letterhead under the guise of an anonymous Volusia County "employee" to various vendors with whom Ryan had business relationships.  (Doc. 311, Ex. 15).  This letter essentially disparages Ryan and Flyaway's performance at DBIA.[23]  Arlene Smith, Assistant to the Director of Aviation

---

[22]   Ryan and Flyaway style Count II as "Defamation and Trade Libel", and not slander.  However, "[s]lander may be defined as the speaking of base and defamatory words, which tend to prejudice another in his reputation, office, trade, business, or means of livelihood."  Spears v. Albertson's, Inc., 848 So. 2d 1176, 1179 (Fla. 1st DCA 2003) (quotation omitted).

[23]   The letter states, *inter alia*, that "I am a current employee of Volusia County, Florida, where Fly Away has also contracted with our airport for the same services...It is my understanding that [the contract with Fly Away] was a miserable failure. Apparently, the dogs have never worked and created a threat larger than the bird problem, as they were running amuck across runways...At this point the county faces considerable embarrassment over what we have viewed as a complete disaster." (Doc. 296, Ex. 15).  The letter goes on to describe Ryan and Flyaway's performance

of DBIA, states that she conducted an inquiry as to the origin of the letter and could not identify any airport personnel who would have written it.  (Id. at Ex. 15, ¶¶ 3-5). Smith further affies that the letterhead upon which the letter was written is not official Volusia County letterhead, and that a records search did not uncover the origin of the letter.  (Id.).  Moreover, Larry Gill, Chief Airfield Manager for Charleston AFB, affies that he received the letter in 2003.  (Id. at Ex. 14).

Ryan and Flyaway have shown there to be a factual dispute as to whether Carter authored this letter, masqueraded its origin, and sent it to Ryan's clients. Further, while plaintiffs move on the grounds that Ryan has failed to proffer damages, there is no requirement to show special damages flowing from the alleged slanderous and libelous actions.  See Spears, 848 So. 2d at 1179 (when words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is defamation per se); see also Hoch v. Rissman, Weisberg, Barrett, et al., 742 So. 2d 451, 457 (Fla. 5th DCA 1999) (general damages are presumed in slander per se actions); Barry College v. Hull, 353 So. 2d 575, 578  (Fla. 3d DCA 1977) (words amounting to libel per se are actionable in and of themselves without allegations of special damages).[24]

---

as an "insult to the county," and the expended time and money on the project as a "waste."  (Id.).

[24]    There are two types of defamation claims under Florida law: defamation per se and defamation per quod.  See Hoch, 742 So. 2d at 457 (analyzing slander claim).

38

This evidence, coupled with Carter's statement during his deposition that Ryan is his only competitor (Doc. 311, Ex. 1-B, p. 189, lines 9-11), is sufficient circumstantial evidence from which a reasonable jury could determine that plaintiffs authored the letter and that its contents are defamatory. Thus, viewing the evidence in the light most favorable to Ryan and Flyaway and drawing reasonable inferences therefrom, plaintiffs' motion is due to be denied on these grounds.[25]

### 3.   Count IV - Sexual Harassment

At the motion to dismiss phase, this Court ruled that, while Florida does not recognize a common law tort for sexual harassment, Count IV, as pled, was sufficient to state a claim for sexual harassment under Title VII of the Civil Rights Act of 1964. (Doc. 100). Plaintiffs now move for summary judgment on that claim asserting, *inter alia*, that Ryan's claim is barred due to her failure to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Ryan admits in her

---

In defamation per se actions, the defamatory statement (written or oral) is actionable on its face. Id. In defamation per quod actions, additional explanation of the words are necessary to show they have a defamatory meaning, or that the person actually defamed is the one who asserts the cause of action. Id. After analyzing the alleged defamatory statements in this case, the defamation action appears to be a per se action, rather than per quod, and does not require proof of special damages.

[25]   The final contention in Ryan's response is that Carter defamed her in 1999 when he told police that she stole a truck. Not only is this allegation not anywhere in Ryan's counterclaim, but it is clearly outside the two year statute of limitations period in Fla. Stat. § 95.11(4)(g). Thus, plaintiffs are entitled to summary judgment on this portion of the defamation claim.

response that her claim is "beyond the applicable statute of limitations." (Doc. 296, p. 19). The parties are correct that Ryan's failure to exhaust her administrative remedies and timely file a charge of discrimination precludes her from proceeding on this claim. See 42 U.S.C. § 2000e-5(e); see also Grier v. Sec'y of Army, 799 F.2d 721, 724 (11th Cir. 1986); Cantrell v. Jay R. Smith Mfg. Co., 248 F. Supp. 2d 1126, 1133-35 (M.D. Ala. 2003). Thus, summary judgment on Count IV (sexual harassment) of Ryan's counterclaims is due to be granted.

## V.    PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Plaintiffs' Motion for a Protective Order (Doc. 315) requests that if certain alleged trade secrets and proprietary information are to be disclosed in this litigation, that it not become public record in this Court's proceedings. Finding no proper showing of the need for sealing, plaintiffs' motion is due to be denied.

Accordingly, it is hereby **ORDERED**:

1.) Merwin's Motion to Strike Plaintiffs' Affidavits and Exhibits in Opposition to Merwin's Motion for Summary Judgment (Doc. 324) is **Denied**.

2.) Merwin's Motion for Summary Judgment (Doc. 295) is **Granted in Part and Denied in Part.** Plaintiffs' remaining claims against Merwin are: a) breach of contract only as stated herein (Count VIII), and b) the alleged conversion of Fly (Count VI).

3.) Ryan and Flyaway's Motion for Summary Judgment (Doc. 294) is

40

**Granted in Part and Denied in Part.**  Plaintiffs' remaining claims are conversion (Count VI) against Ryan, and tortious interference with contracts (Merwin) against Ryan and Flyaway (Count XI).

4.)   Murphy's Motion for Summary Judgment (Doc. 228) is **Granted.**  There are no remaining claims pending against Murphy, and she will no longer be a party to the case.  A Rule 54(b) judgment will be entered in Murphy's favor.

5.)   Plaintiffs' Motion for Summary Judgment on Ryan and Flyaway's Counterclaims (Doc. 296) is **Granted in Part and Denied in Part**.  Ryan and Flyaway's remaining claims against plaintiffs are: a) portions of Count I - Lanham Act, and b) portions of Count II - defamation.

6.)   Ryan's Motion To Strike Plaintiffs' Motion For Summary Judgment (Doc. 297) is **Denied**.  The Court has considered all of plaintiffs' filings in ruling on their summary judgment motions.

7.)   Plaintiffs' Motions to Strike and Deem Admitted (Docs. 300 & 301) are **Moot** as the various requests for admissions appended to the motions do not tend to create a genuine issue of material fact on plaintiffs' claims against Ryan.  While the Court considered many of these requests in ruling on Ryan's motion for summary judgment (Doc. 294), many of the requests (even assuming Ryan's failure to respond) are improper and cannot form the basis of a factual dispute.

8.)   Plaintiffs' Motion for Protective Order (Doc. 315) is **Denied**.

41

9.)     Murphy's Motion to Strike (Doc. 317) is **Moot**.

10.)    Ryan's Motion for Leave to File a Reply to Plaintiffs' Opposition to Ryan's Summary Judgment (Doc. 320) is **Granted**.  The Court considered the arguments raised therein in ruling on the motions for summary judgment.

11.)    Murphy's Motion for Leave to Reply to Plaintiffs' Response in Opposition to Murphy's Motion for Summary Judgment (Doc. 322) is **Denied**.

12.)    Merwin's Motion for Sanctions against Carter and Border Collie (Doc. 262) is **Denied.**

13.)    Plaintiffs' Amended Third Motion for Contempt Order, Fourth Motion for Default Judgment, Fifth Motion to Strike Defendant Ryan's Defenses and Counterclaims, and Fifth Motion for Sanctions Against Defendant Ryan (Doc. 293) is **Denied.**

14.)    Plaintiffs, Ryan and Flyaway, and Merwin are further Ordered to appear telephonically before this Court on **April 28, 2006 at 10:00 a.m.** for a status conference, during which the Court will discuss the procedural posture of this case[26], including whether the parties (plaintiffs, Ryan and Flyaway and Merwin) intend to proceed with their respective pending claims, and appropriate pre-trial and trial deadlines, if necessary.  Counsel for Merwin shall coordinate the conference call and

---

[26]     Because plaintiffs did not seek summary judgment on Merwin's counterclaims for quantum meruit and breach of contract, those claims also remain pending.

then with all parties on the line, call the Court's audio conference number at **904-301-6812.  The call should be placed to the Court five minutes prior to the scheduled hearing time.**

**DONE AND ORDERED** at Jacksonville, Florida this <u>28th</u> day of February, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

t.
Copies to: Counsel of Record, Pro se parties